OPINION
{¶ 1} Defendant-appellant, Joshua D. Ingold, appeals from a judgment of conviction entered in the Franklin County Court of Common Pleas following his no-contest pleas to 21 counts of pandering obscenity involving a minor and 21 counts of pandering sexually-oriented material involving a minor. Because the trial court properly denied appellant's motion to suppress evidence obtained during a police search of his home, we affirm. *Page 2 
 {¶ 2} On August 10, 2004, Detective D.R. Hunt, a deputy with the Franklin County Sheriff's Office ("FCSO"), prepared an affidavit in support of a search warrant for appellant's residence in Groveport, Ohio. Specifically, Detective Hunt averred that he had good cause to believe that evidence of child pornography would be discovered in the residence. Detective Hunt set forth the following facts as the basis for such belief.
 {¶ 3} Detective Hunt, a 23-year veteran of the FCSO, had for the past 12 years conducted vice and narcotic investigations as a detective in the Special Investigations Unit. He received specialized training in conducting child pornography investigations from the Federal Bureau of Investigation and the National Center for Missing and Exploited Children ("NCMEC") and had participated in numerous investigations and search warrants involving child pornography.
 {¶ 4} On July 30, 2004, he received a telephone call from a confidential source ("CS") who identified himself as a friend of appellant. The CS related that while visiting appellant at his residence in August or September 2003, the CS observed on appellant's computer numerous photographic images of nude children. The CS further related that when he confronted appellant about the images, appellant responded that he was "just curious" and that he did not have "a problem."
 {¶ 5} The CS provided additional information about appellant, including the fact that he is gay and lives with his life partner, with whom he owns a home-based business selling candles at festivals and over the internet. The CS provided appellant's telephone number, email address, and website address for the business. The CS indicated that appellant had a Roadrunner account through Time Warner Cable ("Time Warner"). The CS further averred that appellant's life partner contacted him a few days prior to July 30, *Page 3 
2004, and said that he had observed child pornography on appellant's computer and that appellant had utilized the company credit card to access child pornography websites.
 {¶ 6} Detective Hunt's affidavit also detailed his efforts to corroborate the CS's information. To that end, Detective Hunt accessed the business website, which included the same telephone number as that provided by the CS. The website also included the name of appellant's business/life partner, as well as a mailing address for the company that was the same as appellant's residence. Armed with this information, Detective Hunt accessed appellant's driver's license information from the Ohio Law Enforcement Agency Data System ("LEADS"). The LEADS search confirmed appellant's address as that posted on the business website and identified his date of birth as May 30, 1979, making him 25 years old.
 {¶ 7} Thereafter, Detective Hunt obtained a search warrant for appellant's Time Warner Roadrunner account in order to access appellant's unread emails and the websites he had visited. Detective Hunt explained that he sought this information because his training and experience in child pornography investigations indicated that pedophiles download child pornography and maintain it for future review. In support of this statement, Detective Hunt attached a copy of a document entitled "Pedophiles Profile for Search Warrant." We will discuss the contents of this document as part of our analysis of appellant's assignments of error.
 {¶ 8} Detective Hunt also contacted NCMEC and requested a search of appellant's name and the email address provided by the CS. NCMEC discovered an ICQ (an instant messenger service with chat room capabilities) user profile which stated "Hello, my name is Josh One. I'm 15 year [sic] old. Birth Date: 30-may-1989[.] age:13." *Page 4 
Detective Hunt averred that appellant's chat room/instant messenger claim that he was 13 or 15 years old was consistent with the actions of a pedophile. NCMEC also located a Yahoo profile for appellant which included an email address for appellant and a website for the candle business; the profile listed "gay rights" as one of appellant's interests. Detective Hunt averred that the Yahoo profile corroborated the information provided by the CS regarding appellant's candle business and sexual preference.
 {¶ 9} Detective Hunt further averred that on August 9, 2004, he received confirmation of appellant's Roadrunner account from Time Warner Cable, which included the email address provided by the CS. He further indicated that appellant's email account included several emails from adult pornographic websites, with user names consistent with both appellant and his life partner. Detective Hunt stated that this information corroborated the CS's statement that appellant's partner had access to appellant's computer.
 {¶ 10} Based entirely upon Detective Hunt's affidavit, a judge of the Franklin County Municipal Court issued a search warrant authorizing the FCSO to search appellant's residence. Detective Hunt executed the search warrant on August 10, 2004 and seized, among other things, appellant's computers, computer discs, and videotapes.
 {¶ 11} The next day, August 11, 2004, Detective Hunt prepared two separate affidavits in support of search warrants to access the information stored on the computers and the videotapes. In these affidavits, Detective Hunt averred that during the search on August 10, 2004, appellant, after being advised of his rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, admitted that he frequently visited child pornographic websites via his computer and viewed pornographic images of minors *Page 5 
engaged in sexually-explicit conduct via both his computer and the videotapes. Detective Hunt further stated that appellant admitted that he downloaded some of these images to his computer; in addition, both appellant and his life partner stated that some images had been downloaded onto computer discs at their former residence.
 {¶ 12} Based solely upon these two affidavits, the municipal court judge issued search warrants for appellant's computers and videotapes. Detective Hunt executed the search warrants on August 11 and 13, 2004, respectively. Examination of the seized items revealed numerous images of child pornography.
 {¶ 13} Based upon the evidence seized pursuant to the search warrants, appellant was indicted on 21 counts of pandering obscenity involving a minor in violation of R.C. 2907.321 and 21 counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322, all felonies of the fourth degree. Appellant initially pled not guilty to each count in the indictment. He subsequently filed a motion to suppress the evidence seized during the search of his home. Appellee, State of Ohio, did not file a written response to appellant's motion. Following a hearing, the trial court overruled the motion to suppress. Thereafter, appellant pled no contest to all 42 counts in the indictment.[1] The trial court found appellant guilty, determined him to be a sexually-oriented offender, and placed him on community control for a period of five years.
 {¶ 14} Appellant appeals from his convictions and assigns two errors for our review:
 [1]. The Trial Court erred as a matter of law in overruling Appellant's motion to suppress where the search warrant was invalid because the affidavit upon which the search warrant *Page 6 
was based [contained] stale information which failed to establish probable cause to believe that images of child pornography would be found on Appellant's computer.
 [2]. The Trial Court erred as a matter of law in overruling Appellant's Motion to Suppress because the information relayed by the confidential anonymous source did not establish probable cause to obtain a search warrant for Appellant's home.
 {¶ 15} As both of appellant's assignments of error challenge the trial court's overruling of his motion to suppress, we will consider them jointly. Appellant contends that the search warrant authorizing the search of his home was invalid because the supporting affidavit submitted by Detective Hunt did not establish probable cause justifying the search of his residence, as the affidavit was based upon stale information and unsubstantiated hearsay from a confidential anonymous source.
 {¶ 16} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution contains a nearly identical provision. See, also, R.C. 2933.22(A).
 {¶ 17} "A neutral and detached judge or magistrate may issue a search warrant only upon a finding of probable cause." State v. Young (2001),146 Ohio App.3d 245, 254, citing United States v. Leon (1984),468 U.S. 897, 914-915, 104 S.Ct. 3405, 3416. See, also, Crim. R. 41(C). In determining whether a search warrant is supported by probable cause, the issuing judge is confined to the averments contained in the *Page 7 
supporting affidavit. State v. Yanowitz (1980), 67 Ohio App.2d 141, 144. The affidavit must "name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located." Crim. R. 41(C); see, also, R.C. 2933.23.
 {¶ 18} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213,238-239, 103 S.Ct 2317, 2332. "Pursuant to the exclusionary rule, ` * * * all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.' " State v. Oprandi, Perry App. No. 07 CA 5, 2008-Ohio-168, at ¶ 42, quoting Mapp v. Ohio (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691.
 {¶ 19} An affidavit in support of a search warrant need not demonstrate proof beyond a reasonable doubt, or even proof by a preponderance of the evidence, before a judicial officer may find probable cause. Young, supra. Rather, a judicial officer may find probable cause upon only the existence of circumstances that warrant suspicion. State v. Underwood, Scioto App. No. 03CA2930, 2005-Ohio-2309, at ¶ 16. Accordingly, the standard for probable cause demands only a demonstration that a fair probability of criminal activity exists — not a prima facie demonstration of criminal activity. Id., citing *Page 8 George, supra, at 329. Hearsay may serve as the basis for the issuance of a warrant as long as there is a substantial basis for crediting the hearsay. Id., citing United States v. Ventresca (1965), 380 U.S. 102,108, 85 S.Ct. 741, 745.
 {¶ 20} In George, supra, the Supreme Court of Ohio set forth the standard of review to be applied in determining whether an affidavit submitted in support of a search warrant sufficiently establishes probable cause to issue a warrant. "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a [judge], neither a trial court nor an appellate court should substitute its judgment for that of the [judge] by conducting a denovo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." Id. at paragraph two of the syllabus, following Gates, supra. Rather, "the duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for concluding that probable cause existed." Id. The Supreme Court of Ohio continued, stating, "[i]n conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the [judge's] determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id.
 {¶ 21} Appellant first contends that the information contained in Detective Hunt's affidavit was so stale that it could no longer constitute probable cause that child pornography was likely to be found in his residence. Appellant grounds his staleness argument upon the one-year period that elapsed between the time the CS viewed the child pornography, sometime in August or September 2003, and the execution of the search warrant on August 10, 2004. *Page 9 
 {¶ 22} An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time.State v. Hollis (1994), 98 Ohio App.3d 549, 554, citing State v.Jones (1991), 72 Ohio App.3d 522, 526. "`Whether the proof meets this test must be determined by the circumstances of each case.'" Id., quoting Coyne v. Watson (S.D.Ohio 1967), 282 F.Supp. 235, 237. There is no arbitrary time limit that dictates when information becomes stale. Id. The test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues. State v. Prater, Warren App. No. CA2001-12-114, at ¶ 12, citing State v. Floyd (Mar. 29, 1996), Darke App. No. 139787. If a substantial period of time has elapsed between the commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband are still on the premises before the judge may issue a warrant.Yanowitz, supra, at 147.
 {¶ 23} The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for warrant. "The likelihood that the evidence sought is still in place is a function not simply of `watch and calendar but of variables that do not punch a clock' ." Yanowitz, supra, citing Floyd, supra, citingAndresen v. State (Md.App. 10975), 24 Md.App. 128, 331 A.2d 78, 106. Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity. Prater, supra, *Page 10 
at ¶ 13. In child pornography cases, these factors are so closely intertwined that consideration of one necessarily involves consideration of the others.
 {¶ 24} Federal courts addressing challenges to search warrants in child pornography cases, particularly those involving images stored on a computer, typically employ a staleness analysis sensitive to technology and to the particular criminal activity at issue. See United States v.Miller (M.D.Fla. 2006), 450 F.Supp.2d 1321, 1335. "[T]raditional concepts of staleness that might apply to the issuance of search warrants * * * do not mechanically apply to situations, as here, where the object of the search is for images of child pornography stored on a computer." Id.
 {¶ 25} Some courts have underscored the importance of expert opinion in the affidavit establishing that child pornography collectors tend to retain their collections in secure, private, but available places for extended periods of time. For instance, in United States v.Riccardi (C.A.10, 2005), 405 F.3d 852, 861, the affidavit included the detective's expert opinion, based upon his years of law enforcement experience, that possessors of child pornography often obtain and retain images of child pornography on their computers. The court, quotingUnited States v. Lamb (N.D.N.Y. 1996), 945 F.Supp. 441, 460 noted that:
 "The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to quickly destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court; pedophiles, preferential child molesters, and child *Page 11 
pornography collectors maintain their materials for significant periods of time."
 {¶ 26} Courts have also upheld search warrants against staleness challenges even in the absence of an expert opinion in the affidavit. For example, in United States v. Newsom (C.A.7, 2005), 402 F.3d 780, Audry Edwards, the defendant's live-in girlfriend, found images on the defendant's computer of nude and partially nude children engaged in sexually-explicit acts. She confronted the defendant but did not alert the police. She later moved out of the house, but remained in contact with the defendant. A year later, while watching the defendant's house while he was out of town, Edwards looked on the defendant's computer and discovered video clips of her daughter getting out of the shower and then dropping the towel. Edwards recognized the room the daughter was in as her former bedroom in the house.
 {¶ 27} Edwards copied the video clips onto a CD and presented it to the police. She filed a report about the video clips and also reported finding the child pornography the previous year. Based on that information, the police obtained a warrant to search defendant's house and computer equipment. The search turned up, among other things, compromising videotapes of Edwards' daughter and numerous images of child pornography.
 {¶ 28} The court rejected the defendant's argument that the affidavit in support of the search warrant was based upon stale information. The court noted that the judge who issued the warrant had two relevant pieces of information before him — Edwards' initial observation of child pornography and her subsequent discovery, one year later, of video clips of her daughter. The court further noted that the affidavit also stated that *Page 12 
computers provide ample storage space for such images, that computers make it easier to make and swap images, and, at least by implication, that a person could retain such images for long periods of time because of the immense amount of storage space.
 {¶ 29} The court determined that information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned. In so finding, the court relied upon numerous federal court decisions, including United States v. Lacy (C.A.9, 1997),119 F.3d 742, 745 (upholding search warrant based on information ten months old because "the [agent] explained that collectors and distributors of child pornography value their sexually explicit materials highly, `rarely if ever' dispose of such material, and store it `for long periods' in a secure place, typically in their homes"); United States v. Harvey
(C.A.3, 1993), 2 F.3d 1318, 1322-23 (concluding that a warrant was not based on stale information, in part because those who collect child pornography tend to keep it); United States v. Ricciardelli (C.A.1, 1993), 998 F.2d 8, 12 n. 4 (stating, "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years"); United States v. Rabe (C.A.9, 1988),848 F.2d 994, 996 (upholding warrant despite two-year delay between original seizures and warrant because more recent letters indicated that pornographic material was still being kept by the defendant).
 {¶ 30} The court concluded, based upon the affidavit as a whole and taking Edwards' two discoveries together, it was reasonable for the issuing judge to conclude that probable cause existed to believe that the defendant had child pornography in his home. The court so found despite the fact that the affidavit did not specifically explain that collectors of child pornography tend to hold their collections for long periods of time. *Page 13 
 {¶ 31} In United States v. Rowell (N.D. Texas, 2007), No. 2:06CR0074(1), the district court concluded that the information in the affidavit was not stale despite a three-month lapse between the defendant's access and subscription to a child pornography website and application for the search warrant. The court so concluded even without information from the affiant indicating that child pornography is the type of contraband ordinarily retained for long periods of time and kept by pedophiles or other persons disposed to view child pornography over a period of time. Citing United States v. Winningham (D.Minn. 1966),953 F.Supp. 1068, 1079, n. 19, the court averred that it could "take notice of the fact that the commission of the crime of possession of child pornography, by its nature, involves the acquisition of images of child pornography and that individuals who acquire such child pornography ordinarily retain those images for long periods of time and view such child pornography repeatedly rather than only on a single occasion." The court further noted that at least one circuit had found that "computer files are of a type that could be expected to be kept for long periods of time in the place to be searched." Id., citing United States v.Hay (C.A.9, 2000), 231 F.3d 630, 636. The court also observed that "[c]hild pornography contraband is unlike other contraband or illegal goods which are subject to being readily disposed of. Child pornography is unlike stolen merchandise which is usually sold in a short amount of time, or narcotics which may be sold or used in a short period of time."
 {¶ 32} Although we are not bound by federal court decisions, such authority can be persuasive. Further, Ohio courts have held similarly. In State v. Young (1988), 37 Ohio St.3d 249, 257, information in the search warrant affidavit concerning the observation of child pornography in the defendant's home was based upon statements from *Page 14 
one witness who did not provide the exact dates of his observation and a second witness who stated that his observations occurred approximately three months before. The affidavit recited in detail the circumstances surrounding the witnesses' observations, including the fact that the defendant had "picked up" the witnesses and paid them to perform sex acts and pose nude for photographs; the affidavit also included a psychological profile of pedophiles that revealed that they do not destroy their child pornography, but rather re-live their sexual experiences through photographs of previous partners.
 {¶ 33} The court found that the information in the affidavit was not stale, despite the three-month lapse between the second witness's observation of the pornographic materials and execution of the warrant. The court noted that the affidavit was sworn to within one week after the first witness was interviewed and that the facts detailed in the affidavit provided the issuing magistrate with probable cause to believe the materials described in the affidavit could still be found where they had been observed. See, also, State v. O'Connor, Butler App. No. CA2001-08-195, 2002-Ohio-4122, ¶ 19 ("The nature of the evidence for which the police were searching allowed the magistrate to draw a reasonable inference that child pornography would likely be found in O'Connor's residence, because O'Connor needed a secure place where he could keep such material and have access to it during his leisure time.") (emphasis sic).
 {¶ 34} Employing these analyses in the instant case, we find that the information in the affidavit is not so stale as to render the warrant defective. As noted, Detective Hunt attested that based upon his training and experience, a person who possesses child pornography tends to keep the images he collects indefinitely. "`[T]he expertise and *Page 15 
experience of the officer are to be taken into account in applying theFourth Amendment probable cause test', even if `the officer would not qualify as an expert witness on the subject.'" Behrel v. Maryland (May 7, 2003), 151 Md.App. 64, 89, 823 A.2d 696, citing 2 LaFave Section 3.2(c), at 38-39, 38 n. 70. In addition, Detective Hunt attached a "Pedophiles Profile For Search Warrant," which includes a list of characteristics typically ascribed to pedophiles. Among these characteristics is the avid collection of all types of child pornography and child erotica, as well as adult pornography, maintenance of an inventory of the child pornography, failure to destroy their collections of child pornography, and the use of home computers to document their activities.
 {¶ 35} Detective Hunt also averred that the CS reported that appellant's life partner stated that he discovered child pornography on appellant's computer a few days prior to telephoning Detective Hunt. "`Where recent information corroborates otherwise stale information, probable cause may be found.'" United States v. Spikes (F.C.A.6, 1998),158 F.3d 913. The issuing judge could reasonably infer that appellant was still keeping pornographic material on his computer and that appellant had an ongoing interest in such material. Accordingly, the affidavit describes ongoing criminal activity rather than just a one-time occurrence.
 {¶ 36} Further, the viewing of child pornography is, by its nature, a solitary and secretive crime. Thus, the issuing judge could reasonably assume that appellant would keep his computer-based images of child pornography in a secret safe place, such as his home, and that he would transport the computer that housed his collection to his new residence. As well, the affidavit establishes that appellant's life partner viewed child pornography on appellant's computer after appellant moved to the new residence. As *Page 16 
noted in Behrel, supra, "it was the items sought in appellant's residence, not the residence itself, which were of critical importance here. Therefore, this case is unlike those in which the particular place sought to be searched is critical to the determination of probable cause." Id. at 94.
 {¶ 37} In sum, the factors identified in Prater indicate that evidence relating to the CS's August or September 2003 observation of child pornography on appellant's home computer did not become stale during the one-year period before law enforcement authorities sought and executed the search warrant. The nature of the crime, possession of child pornography, the enduring quality of child pornography to the perpetrator, the fact that criminal activity involving child pornography is often conducted in a private setting, such as a home, and the fact that the two separate incidents of criminal activity occurred, the latest being a week or so prior to execution of the warrant, suggests that the information in the affidavit was not stale. As such, appellant's challenge to the search on staleness grounds is without merit.
 {¶ 38} Appellant also attacks the sufficiency of the affidavit underlying the warrant. Specifically, appellant challenges the CS's "basis of knowledge" and "veracity" as insufficient to establish probable cause. Initially, we note that while it is desirable to have the affiant provide as much information as possible from his own knowledge, practical considerations often require the affiant to rely on hearsay information. State v. Taylor (1992), 82 Ohio App.3d 434, 442. This is particularly true, where, as here, the alleged criminal activity occurs in the privacy of the offender's home. Further, the fact that the affiant's knowledge may be the result of double or multiple levels of hearsay does not, per *Page 17 
se, invalidate a judge's determination of probable cause and the resulting search warrant. Id.
 {¶ 39} The basis of knowledge and the veracity of the person supplying the hearsay information are circumstances that must be considered in determining the value of the information and whether probable cause exists. Prater, ¶ 7. Here, the CS was not a confidential or anonymous informant repeating hearsay information to police in the form of a tip. Rather, he was an ordinary, honest citizen who personally observed what appeared to be criminal conduct and reported that information to the police. "[Ordinary citizen informants who do not happen to give a name should not be treated like anonymous informants." State v. Jordan (Oct. 19, 2001), Montgomery App. No. 18600, 2001-Ohio-1630, citing Maumee v.Weisner (1999), 87 Ohio St.3d 295, 299. .
 {¶ 40} The affidavit set forth a significant basis for finding that the CS was a citizen informant. Although he did not reveal his name, he described himself as a friend of appellant and stated that he been inside appellant's home and personally observed child pornography on appellant's computer. The CS also reported that appellant's life partner had informed him that he recently had personally observed child pornography on appellant's computer. Given the extremely sensitive nature of the criminal activity involved here, we find it understandable that the CS did not divulge his name to the police.
 {¶ 41} "Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable.' " Jordan, quoting State v.Cartensen (Dec. 18, 1997), Miami App. No. 91-CA-13. See, also, State v.Smith (Aug. 21, 1997), Cuyahoga App. No. 70855. In addition to his *Page 18 
personal observation of child pornography on appellant's computer, the CS also provided appellant's name, mailing address, telephone number, and email address, along with information about appellant's business enterprise and personal life. There is no evidence to suggest that the CS harbored any selfish motivation for contacting the police, such as promises of leniency or financial benefit, nor is there evidence to suggest that the CS had any incentive to fabricate or exaggerate the information he provided to Detective Hunt.
 {¶ 42} Further, Detective Hunt, through independent police investigation, sufficiently corroborated much of the information provided by the CS. Indeed, Detective Hunt confirmed appellant's name, mailing address, email address, business website, and sexual preference. In addition, Detective Hunt uncovered additional facts about appellant's computer usage, i.e., that he had visited internet chat rooms posing as a 15-year-old boy. Based on his extensive experience and training in the investigation of child pornography, Detective Hunt concluded that appellant's behavior was consistent with the actions of a pedophile.
 {¶ 43} Given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of the person supplying hearsay information, we conclude that the municipal court judge had a substantial basis for concluding that there existed probable cause to issue the warrant. Even if the case could somehow be characterized as doubtful or marginal, which it is not, the deference accorded the judge's determination of probable cause would compel us to conclude that the search warrant was nevertheless valid. George, supra, paragraph two of the syllabus. Accordingly, appellant's two assignments of error are without merit. *Page 19 
 {¶ 44} For the foregoing reasons, we overrule both of appellant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BROWN and FRENCH, JJ., concur.
[1] The trial court's March 1, 2007 decision and entry erroneously states that appellant entered "an `Alford' plea of guilty" to all 42 counts. *Page 1