[Cite as *State v. Gleason*, 2022-Ohio-3893.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| | : | Case No. 22-CA-00003 |
| MARILYN GLEASON | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
                              Pleas, Case No. 21CR0038


JUDGMENT:                     Affirmed


DATE OF JUDGMENT:             October 31, 20223


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

NANCY RIDENOUR                            JORDEN M. MEADOWS
111 North High Street                     P.O. Box 310
P.O. Box 569                              Logan, OH  43138
New Lexington, OH  43764

*Wise, Earle, P.J.*

{¶ 1} Defendant-Appellant Marilyn Gleason appeals the March 11, 2022 judgement of the Perry County Court of Common Pleas overruling her motion to suppress. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} The parties herein agree on the facts. The Central Ohio Drug Enforcement Taskforce (CODE) had received information regarding appellant and her two brothers, Bryan and Alan Ferguson, selling methamphetamine since 2014. The siblings live in adjacent houses on State Route 669 NE in Perry County. Appellant lives at 7650 State Route 669 NE, Bryan at 7626, and Alan at 7642. A search warrant for appellant's home was obtained on Friday October 3, 2020 by Perry County Sherriff's Office Detective Lieutenant Kevin Starrett, also member of the CODE Taskforce. The information available to Starrett and relied upon in his affidavit for the search warrant were as follow:

{¶ 3} On August 19, 2014, appellant purchased methamphetamine at a residence in Crooksville, Ohio which was under surveillance for drug activity. She was stopped as she left the residence by Starrett and consented to a search which yielded .31 grams of methamphetamine. At that time, appellant provided her address at 7650 State Route 669 NE.

{¶ 4} On October 10, 2014, an active methamphetamine lab was discovered by Perry County Sheriff's deputies at 7626 State Route 669 NE. Alan Ferguson was charged and convicted in that matter.

{¶ 5} On March 17, 2017, CODE officers conducted a search at Bryan Ferguson's home at 7626 State Route 669 NE. Methamphetamine was located in Ferguson's bedroom and on the person of Christopher Gleason, appellant's son.

{¶ 6} On June 27, 2019, Bryan Wolfe visited the Ferguson property and later sold drugs to an informant. While doing so, Wolfe told the informant that his supplier, Michael Whitehouse, would be delivering an ounce of methamphetamine to the Fergusons on State Route 669. In the process of making the delivery, Whitehouse was intercepted by law enforcement and found to have two ounces of methamphetamine in his vehicle.

{¶ 7} On August 27, 2019, Starrett met with Tracy Love who was under indictment in Muskingum County for aggravated trafficking in drugs. With the assistance of counsel Love provided a proffer. Love provided addresses for appellant and her brothers, indicated Bryan Ferguson was dealing large quantities of methamphetamine and that she had seen these large quantities as recently as a month before her proffer. Love permitted a search of her cell phone which produced messages between Love and appellant indicating appellant was trafficking in methamphetamine for Love. In the messages Love was demanding money owed her by appellant.

{¶ 8} On July 30, 2020, the Federal Bureau of Investigation was investigating activities by Michael Siegenthal who was caught conspiring to rob and murder several drug dealers in the Zainesville and Muskingum County area. Siegenthal identified appellant and her brothers as methamphetamine dealers. He indicated they sold from their residences and a garage on the hill at their property. Siegenthal further stated he had purchased methamphetamine from appellant on July 29, 2020 and that she and her brothers were known to possess up to half a pound of methamphetamine at a time. As to the layout of the property, Siegenthal stated appellant lived in the house on the left side of the driveway and one of her brothers lived in the house on the right side of the driveway.

{¶ 9} On September 30, 2020, Russell Knight was observed by law enforcement officers at the Ferguson/Gleason property. While he was there, several other vehicles

came and went. Officers attempted to stop Knight as he left, but he fled into the woods on his dirt bike. Knight was, however, arrested the following day and admitted to buying methamphetamine from Bryan and using methamphetamine on the property. He stated the sale took place in a garage on the property.

{¶ 10} On October 2, 2020, Starrett presented an affidavit containing the above outlined facts to Perry County Municipal Court Judge Dean Wilson. Judge Wilson signed the search warrant the same day.

{¶ 11} The warrant was executed on October 6, 2020 at 7650 State Route 669 NE. Inside appellant's residence officers located methamphetamine, cocaine, oxycodone, scales, baggies, drug paraphernalia, weapons, and pay/owe sheets connected to appellant.

{¶ 12} Appellant was arrested and subsequently interviewed. She admitted she and her brother Bryan were selling methamphetamine from their property.

{¶ 13} On May 26, 2021, the Perry County Grand Jury returned an indictment charging appellant with five counts of aggravated possession of drugs, and one count each of aggravated trafficking in drugs, illegal manufacture of drugs, and possession of cocaine. Appellant pled not guilty to the charges.

{¶ 14} On February 17, 2022, appellant filed a motion to suppress the evidence obtained as a result of the search of her home alleging the information contained in the affidavit was insufficient, stale, and lacked indicia of reliability. At a hearing held on February 23, 2022 the parties stipulated that October 2, 2020, when the warrant was issued, was a Friday and October 6, 2020, when the warrant was served, was a Tuesday. No testimony was presented on the motion to suppress. Rather the parties briefed the matter.

{¶ 15} On March 7, 2022, the state filed its response and on March 11, 2022, the trial court issued its decision overruling appellant's motion to suppress.

{¶ 16} On March 17, 2022, appellant entered pleas of no contest to count two, aggravated possession of drugs, a felony of the third degree, count seven, aggravated possession of drugs, a felony of the fifth degree, and count eight, possession of cocaine, a felony of the fifth degree. The state dismissed the remaining counts of the indictment. The trial court found appellant guilty, convicted her, and sentenced her to an aggregate total of 42 months incarceration.

{¶ 17} Appellant timely filed an appeal and the matter is now before this court for consideration. She raises three assignments of error as follow:

I

{¶ 18} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING APPELLANT'S MOTION TO SUPPRESS WHERE THE SEARCH WARRANT WAS INVALID BECAUSE THE AFFIDAVIT UPON WHICH THE SEARCH WARRANT WAS BASED CONTAINED STALE INFORMATION AND LACKED EVIDENCE OF ONGOING CRIMINAL ACTIVITY BY THE APPELLANT, THEREFORE FAILING TO ESTABLISH PROBABLE CAUSE THAT EVIDENCE OF CRIMINAL ACTIVITY WOULD BE FOUND AT THE SITE OF THE SEARCH."

II

{¶ 19} "THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING

APPELLANT'S MOTION TO SUPPRESS WHEN THE AFFIDAVIT RELIED ON INFORMANTS WHO LACK INDICIA OF RELIABILITY."

III

{¶ 20} "THE TRIAL ERRONEOUSLY FOUND THAT THERE WAS A GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE."

I, II

{¶ 21} We address appellants first and second assignments of error together. In her first assignment of error, appellant argues the search warrant was invalid because the information contained in the affidavit was stale and lacked evidence of ongoing criminal activity by appellant. In her second assignment of error, appellant argues the affidavit relied on information from informants who lacked indicia of reliability. We disagree.

Standard of Review

{¶ 22} As stated by the Supreme Court of Ohio in *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible

evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 23} As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

Search Warrants in General

{¶ 24} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph one of the syllabus (1980), citing *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As a reviewing court, we must accord great deference to the issuing judge's determination of probable cause. See *George*, at paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id*. The totality of the circumstances must

be examined in determining whether probable cause existed for a search warrant. *Illinois v. Gates*, supra. "Probable cause" means only the probability and not a prima facie showing of criminal activity. *George*, supra, at 644. See, also, *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

Staleness

{¶ 25} "There is no arbitrary time limit that dictates when information [offered to support a search warrant application] becomes stale." *State v. Ingold*, 10th Dist. Franklin No. 07-AP648, 2008-Ohio-2303. Rather, "[t]he test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues." *Id*. "The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for warrant." *Id*. at 23. "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity." *Id*.

{¶ 26} Relevant here, when an affidavit supporting a warrant involves ongoing criminal activity like drug trafficking, the affidavit may support the issuance of a search warrant even when the information provided in the affidavit is not recent. *State v. Stewart*, 5th Dist. Perry No. 21-CA-00008, 2021-Ohio-4444 ¶ 15 citing *United States v. Ortiz*, 143 F.3d 728, 733 (2d Cir. 1998), and *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981) ("[W]hen the supporting facts 'present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and the presentation of the application becomes less significant.' ")

{¶ 27} For example, information in an affidavit over one month old has been found to support probable cause to issue a search warrant where the affidavit describes ongoing criminal activity. See, e.g., *State v. Clouser*, 4th Dist. Highland No. 16CA4, 2016-Ohio-5370, 2016 WL 4268772, ¶ 16-17 (two and one-half months between last incidents of drug transactions and warrant application not stale and supported probable cause); *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, 2002 WL 2005708, ¶ 10-14 (six months between last drug transactions and warrant application not stale and supported probable cause).

{¶ 28} The affidavit at issue indicates appellant and both her brothers have been persons of interest to the CODE task force since August of 2014. Affidavit ¶ 3. Specific to the most recent information contained in the affidavit regarding appellant, on August 27, 2019, a search of Tracy Love's cell phone indicated appellant was trafficking in methamphetamine for Love. Affidavit, ¶ 9. On July 30, 2020, Michael Siegenthal was interviewed by FBI and CODE agents and corroborated information from Love when he identified appellant and her brothers as methamphetamine dealers. He indicated they sold from their residences and a garage on the hill at their property. Siegenthal further stated he had purchased methamphetamine from appellant just the day before and that she and her brothers were known to possess up to half a pound of methamphetamine at a time. On the day he purchased methamphetamine from appellant she had one ounce. Siegenthal went to appellant's home to buy drugs with Russell Knight. Affidavit ¶ 10. On October 1, 2020, Knight corroborated information from Siegenthal when he reported being on the Gleason/Ferguson property on September 30, 2020, purchasing methamphetamine from Bryan in the garage, and observing Bryan selling to others present.

{¶ 29} Based on the information contained in the affidavit, trafficking in methamphetamine appears to be a Ferguson/Gleason family enterprise as it establishes a pattern of criminal activity by appellant and her family members over many years. The more recent information in the affidavit regarding appellant indicates she continued to be involved in trafficking methamphetamine. Siegenthal purchased methamphetamine from appellant just two months before the warrant was issued. Given the ongoing nature of drug trafficking, we find the information contained in the affidavit was sufficiently contemporaneous in time to support a finding of probable cause.

Reliability of Informants

{¶ 30} Appellant also argues the affidavit relied on criminal informants who lacked indicia of reliability. In support, appellant cites *State v. Siegel*, 4th Dist. 180 N.E.3d 574, 2021-Ohio-4208 for the premise that an affiant must demonstrate some indicia of reliability when an identified informant is part of the criminal milieu. In that matter the Fourth District noted:

> Although *Connin* [6th Dist. Fulton No. F-20-005, 2020-Ohio-6867] states, with respect to a known informant that is part of the criminal milieu, that "the affiant must attest to the informant's veracity, reliability, *or* basis of knowledge or must independently corroborate the information[,]" the requirements are improperly stated in the disjunctive. (Emphasis added.) *Id.* at ¶ 18. Instead, the affiant must attest to the informant's veracity, reliability, *and* basis of knowledge, or must independently corroborate the information. See *State v.*

*Kerns*, 4th Dist. Highland No. 15CA6, 2016-Ohio-63, 2016 WL 112422, ¶ 18

{¶ 31} We note that *Siegel* is distinguishable from the instant matter in that only one informant was involved in *Siegel*, and the affiant involved did not provide independent corroboration of the information provided by the informant. Here however, Starrett corroborated the information provided by each informant through independent police work. The information obtained from Love's phone was corroborated through an interview with Siegenthal, and the information from Siegenthal was corroborated through an interview with Knight. The information from all three was the same – appellant and her brothers were trafficking in drugs on their property. Moreover, on September 30, 2020, officers conducted surveillance of the Gleason/Furguson property and observed several individuals coming and going from the property including Knight. We therefore find sufficient independent corroboration of the information provided by each informant.

{¶ 32} The first and second assignments of error are overruled.

III

{¶ 33} In her final assignment of error, appellant argues the trial court erred in finding that even if there was not a substantial basis for concluding probable cause existed, the good-faith exclusionary rule should apply.

{¶ 34} Because we have found the affidavit in support of the warrant was sufficient to show the judge had probable cause to issue the warrant, we decline to analyze the application of the good-faith exception since the issue is moot. See *Pernick v. Dallas*, 7th Dist. Jefferson No. 21 JE 0011, 2021-Ohio-4635, ¶ 51, appeal not allowed, 166 Ohio St.3d 1449, 2022-Ohio-994, 184 N.E.3d 159 (declining to address a moot issue).

{¶ 35} Appellant's final assignment of error is overruled.

{¶ 36} The judgment of the Perry County Court of Common Pleas is affirmed.

By Wise, Earle, P.J.

Gwin, J. and

Delaney, J. concur.

EEW/rw