[Cite as *State v. Hill*, 2023-Ohio-4381.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2023CA00029 |
| DAVIS HILL | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:      Appeal from the Stark County Court of Common Pleas, Case No. 2019CR1338

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 4, 2023

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

VICKI L. DeSANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South, Suite #510
Canton, Ohio 44702-1413

For Defendant-Appellant

RHYS B. CARTWRIGHT-JONES
42 N. Phelps Street
Youngstown, Ohio 44503

*Hoffman, P.J.*

{¶1}    Defendant-appellant Davis Hill appeals the judgment entered by the Stark County Common Pleas Court convicting him following his pleas of no contest to one count of trafficking in heroin with a major drug offender specification (R.C. 2925.03(A)(2)(C)(6)(g), R.C. 2941.1410) one count of possession of heroin with a major drug offender specification (R.C. 2925.11(A)(C)(6)(f), R.C. 2941.1410) one count of trafficking in fentanyl-related compound with a major drug offender specification (R.C. 2925.03(A)(2)(C)(9)(h), R.C. 2941.1410) one count of possession of fentanyl-related compound with a major drug offender specification (R.C. 2925.11(A)(C)(11)(g), R.C. 2941.1410) two counts of having weapons while under disability (R.C. 2923.13(A)(2)), and one count of aggravated possession of drugs (R.C. 2925.11(A)(C)(1)(a)), and sentencing him to an aggregate term of incarceration of sixteen to twenty-one and one-half years.  Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}    In 2019, a multi-agency investigation was launched following a tip from an FBI wire stating Appellant had taken over for a drug trafficker who was in prison.  Agent Kelly Hmiel of the Stark County Sheriff's Department Metro Narcotics Unit Task Force was involved in the investigation.

{¶3}    Over a three-month period, Agent Hmiel utilized a confidential informant (hereinafter "C.S.") to make controlled drug buys from Appellant.  The officer monitored Appellant's routes taken and the houses he visited, and determined the drug-related history of people who lived in the homes Appellant's visited.  She witnessed an unknown female enter and leave Appellant's residence, and subsequently make a hand-to-hand transaction with another person.

{¶4} Officers watched Appellant's residence in Canton, Ohio, during the controlled drug buys. After a call or text from C.S. was sent to Appellant, officers saw Appellant leave the residence and drive to the site of the controlled buy. Appellant used the same vehicle every time, and never left the vehicle. During the controlled buys, C.S. wore a wire and used buy-money supplied by police to purchase contraband from Appellant. The recovered contraband was sent to the Stark County Crime Lab, where the drugs recovered were found to be either heroin, fentanyl, or carfentanil.

{¶5} On May 29, 2019, officers sought a search warrant to install a GPS tracking device on Appellant's vehicle. The warrant (hereinafter "tracker warrant") was issued, and a tracking device was placed on the vehicle which alerted Agent Hmiel every time Appellant went mobile. Two or three more controlled buys occurred during the time the tracker was on the vehicle. In late June, 2019, officers followed Appellant's vehicle to a well-known drug house in Akron, and followed the vehicle back to Appellant's residence. Agent Hmiel was able to identify Appellant as the person in the vehicle.

{¶6} Officers obtained a search warrant for Appellant's residence on July 1, 2019. The next day, officers set up a vehicle perimeter around the residence. When Appellant returned to the residence, officers told him they had a warrant to search the residence. Appellant was searched. On Appellant's person, officers found multiple cell phones, a small bag of marijuana, and over a thousand dollars in cash. Appellant was placed in the back of a police cruiser while officers swept the house for safety reasons.

{¶7} Agent Hmiel then took Appellant inside the residence, provided him with the search warrants, and had him sit at the kitchen table. Agent Jarrod Blanc was seated at the table across from Appellant. The officer was going through paperwork, as he was

responsible to inventory the items found in the house. After two or three minutes, Appellant asked the agents if they were looking for "dog food," which is slang for heroin, and told the officers the "dog food" was in the top of the closet. Appellant also mentioned there was a rifle under the bed.

{¶8} Appellant was indicted by the Stark County Grand Jury. He moved to suppress, generally challenging a lack of probable cause to support the affidavit for the warrant for the search of his residence. The trial court held a suppression hearing. In a post-hearing brief, Appellant raised several additional issues: (1) the confidential informant was unreliable, (2) the controlled buys were stale and failed to provide a nexus between his residence and the contraband, (3) the search could not be redeemed through the good faith exception, and (4) Appellant's un-*Mirandized* statements were the product of a custodial interrogation and should be suppressed. The trial court overruled the suppression motion as to the search of the residence. The trial court did not expressly rule on the issue of the suppression of statements Appellant made to officer Blanc during the search of the residence.

{¶9} Appellant filed a second suppression motion, seeking to suppress evidence received from the tracker warrant. Appellant claimed he had not been served with the warrant and affidavit, in violation of Crim. R. 41. He also argued the warrant did not support probable cause to connect the contraband to the vehicle. Appellant also filed a supplement to this motion, arguing the confidential source was not reliable, and asking the trial court to reconsider its ruling on the prior suppression motion. A second suppression motion was held concerning the tracker warrant. The trial court orally overruled the motion at the conclusion of the hearing.

**{¶10}** On July 28, 2020, the trial court held a hearing to discuss the State's plea offer. Appellant expressed interest in entering a plea of no contest, to which Appellee objected. The trial court indicated a no contest plea was not an option. Appellant entered a plea of guilty, and appealed to this Court, arguing in part the trial court abused its discretion in not allowing him to enter a plea of no contest. This Court affirmed. *State v. Hill,* 5th Dist. Stark No. 2020 CA 00130, 2021-Ohio-1946.

**{¶11}** Appellant appealed to the Ohio Supreme Court. The Ohio Supreme Court reversed, finding the trial court abused its discretion in refusing to accept Appellant's plea of no contest based on its own review of appealable issues. *State v. Hill*, 171 Ohio St.3d 524, 2022-Ohio-4544, 218 N.E.3d 891, ¶23. The case was remanded to the trial court with instructions allow Appellant to enter a new plea.

**{¶12}** On remand, Appellant entered a plea of no contest to all charges. The trial court sentenced him to an aggregate term of incarceration of sixteen to twenty-one and a half years incarceration. It is from the March 16, 2023 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

**{¶13}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness

credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

{¶14} Appellant has raised three separate issues concerning the trial court's denial of his motions to suppress: (1) the tracker warrant was not timely served and the confidential informant who provided information supporting the warrant was not reliable, (2) the home search warrant was not supported by probable cause, and the informant was unreliable, and (3) the trial court erred in denying the motion to suppress his un-*Mirandized* statement to police.

### Tracker Warrant

{¶15} Appellant first argues he was not timely served with a copy of the tracker warrant, in violation of Crim. R. 41(D)(2), which provides:

(2) *Tracking Device Warrant.* The officer executing a tracking device warrant shall enter onto the warrant the exact date and time the device was installed and the period during which it was used. The return shall be made promptly, either in person or by reliable electronic means, after the use of the tracking device has ended. Within 10 days after the use of the tracking device has ended, the officer executing a tracking device warrant must serve a copy of the warrant on the person who was tracked or whose property was tracked. Service may be accomplished by delivering a copy to the person who, or whose property, was tracked; or by leaving a copy at the person's residence or usual place of abode with an individual of suitable age and discretion who resides at that location and by mailing a copy to the person's last known address. Upon the request of a prosecuting attorney or a law enforcement officer, and for good cause shown, the court may authorize notice to be delayed for a reasonable period.

{¶16} State's Exhibit 3, admitted into evidence at the suppression hearing held July 27, 2020, reflects the tracker warrant was removed from the vehicle on July 2, 2019, which was the same day the search warrant was executed on Appellant's residence. Agent Hmiel testified multiple times she personally served both the tracker warrant and the search warrant for the residence on Appellant on July 2, 2019.  Tr. (Supp. 7/27/20) 11, 12, 14.  Dash camera video admitted into evidence at the suppression hearing reflects Appellant asked for copies of the warrants, and was informed by officers he would receive copies.  The video shows Agent Hmiel carrying paperwork into the residence as she

escorted Appellant inside. In addition, on a call recorded from the jail the next day, Appellant discussed the search warrant and the tracker warrant. We find the trial court did not err in finding the tracker warrant was served within 10 days after the use of the tracking device had ended, and the State therefore complied with Crim. R. 41(D)(2).

{¶17} Appellant next argues the evidence does not demonstrate the reliability of the confidential informant used to support probable cause for the tracker warrant. At the July 27, 2020 suppression hearing concerning the tracker warrant, the State relied on the face of the affidavit and did not present testimony to demonstrate probable cause to support the warrant or the reliability of the informant. Although it is apparent from the court's oral ruling the trial court reviewed the affidavit filed in support of the warrant, the affidavit is not a part of the record before this Court on appeal. Therefore, we must presume regularity in the proceedings below. *See, e.g., Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 400 N.E.2d 384 (1980).

### Search Warrant for Residence

{¶18} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George*,

45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph one of the syllabus (1980), *citing Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As a reviewing court, we must accord great deference to the issuing judge's determination of probable cause. *See George*, at paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id.* The totality of the circumstances must be examined in determining whether probable cause existed for a search warrant. *Illinois v. Gates, supra.* "Probable cause" means only the probability and not a prima facie showing of criminal activity. *George*, *supra*, at 644. *See, also, Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶19} The trial court made the following findings with regard to probable cause to support the warrant:

> In this case, there were multiple controlled buys conducted over a period of time prior to obtaining the warrant. Defendant argues that because the controlled buys were conducted away from his residence, there was not a sufficient connection to his home to establish a reasonable belief that contraband was likely to be found in his residence. The Court has reviewed both a redacted and unredacted version of the affidavit submitted in support of the warrant. The Court finds that paragraph 23 of the amended redacted affidavit, together with all the facts and circumstances set forth in the totality of the affidavit, establish a fair probability that evidence of a crime was likely to be found in Defendant's home. The Court previously ordered the prosecution to submit an amended redacted affidavit to Defendant's

counsel reflecting the specific information on which this Court has relied. The Court further finds that the evidence in support of the affidavit was not stale and was, in any event, part of a pattern of conduct.

**{¶20}** Judgment Entry, April 22, 2020.

**{¶21}** Although it is apparent the trial court reviewed the affidavit filed in support of the warrant, the affidavit is not a part of the record before this Court on appeal. Therefore, we must presume regularity in the proceedings below. *See, e.g., Knapp v. Edwards Laboratories*, *supra.*

**{¶22}** Further, the evidence submitted at the hearing demonstrates probable cause existed for the issuance of the warrant. Officers conducted six or seven controlled buys between Appellant and the informant, C.S. Although these buys were not conducted at Appellant's residence, officers observed Appellant leave the residence immediately after receiving a call or text from C.S. and travel to the arranged meeting place for the buy. Illegal drugs were recovered from each of the controlled buys. We find a sufficient nexus between the controlled buys and Appellant's residence to support probable cause for the issuance of the warrant.

**{¶23}** Although no evidence was submitted concerning the reliability of C.S. based on past police dealing with the informant, during the controlled buys C.S. wore a wire and used buy-money provided by law enforcement to purchase contraband from Appellant. With each monitored buy, agents recovered drugs from C.S. Before and after the controlled buys, C.S. was searched, and police maintained sight of C.S. at all times during the buys. We find police verified the reliability of the informant throughout the

investigation by monitoring the informant and confirming the informant's information directly.

**{¶24}** Finally, Appellant argues the evidence of the controlled buys was stale. "There is no arbitrary time limit that dictates when information [offered to support a search warrant application] becomes stale." *State v. Ingold*, 10th Dist. Franklin No. 07-AP648, 2008-Ohio-2303. Instead, "[t]he test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues." *Id. See also State v. Rieves*, 8th Dist. Cuyahoga No. 105386, 2018-Ohio-955, 109 N.E.3d 190, ¶ 31 (information becomes stale when enough time has elapsed such that there is no longer sufficient basis to believe the items to be seized are still on the premises). "The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for warrant." *Ingold* at 23. "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity." *Id.*

**{¶25}** The investigation into Appellant's activity began approximately three months before the search warrant was issued. The final buy was made a few days prior to the issuance of the warrant. Supp. (I) Tr. 42. We find the testimony at the hearing supports the trial court's finding the information was not stale, but was part of an ongoing investigation.

**Suppression of Statements**

{¶26} Appellant argues the trial court erred in overruling his motion to suppress his statements made during the search of his residence. The State argues at the outset Appellant only raised this issue in the trial court in his post-hearing brief and the issue was never ruled on by the trial court; therefore, he has waived any error.

{¶27} We find the trial court impliedly overruled the motion by accepting Appellant's plea. Further, although this issue was only raised in Appellant's post-hearing brief, it appears from the transcript of the first suppression hearing the parties contemplated the issue being raised subsequent to the hearing, and therefore the State called Agent Jarrod Blanc to testify at the first suppression hearing regarding the statements made by Appellant. We therefore address the issue on the merits, and find it was not waived.

{¶28} The Fifth Amendment to the United States Constitution provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." This right applies to state action through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964.

{¶29} The United States Supreme Court has "adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination." *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011). In *Miranda v. Arizona*, the court held prior to questioning, a suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. If these *Miranda* warnings

are not given prior to a custodial interrogation, the prosecution may not use the statements obtained from the suspect at trial. *Id.* The court clarified, however, that by "custodial interrogation", it meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

**{¶30}** In the instant case, there is no evidence questioning was initiated by law enforcement. Even assuming arguendo Appellant was "in custody" when seated at his kitchen table across from Agent Blanc,[1] we find his statements concerning the location of heroin and a rifle in the house were not the product of interrogation. Agent Blanc testified he and Agent Mike Volpe were seated at the kitchen table with Appellant. Agent Blanc testified he was packaging inventory as it was brought to him. Maybe two to three minutes after Appellant was brought to the table, Appellant made the statements. The statements were not in response to any questions posed by officers in the room, but were spontaneously offered by Appellant. No further questioning occurred as a follow up to Appellant's statements. Agent Blanc informed Agent Hmiel what Appellant said, and she removed Appellant from the room. Based on the testimony from the first suppression hearing, we find the trial court did not err in failing to suppress the statements made by Appellant on the basis he was not read his *Miranda* rights. We find *Miranda* warnings were not required in the instant case, because Appellant was not subject to interrogation by police officers.

---

[1] Although not determinative of the issue on appeal, Agent Hmiel testified she believed Appellant was in custody prior to making the statements in question because he had been handcuffed, placed in a cruiser, and moved from location to location by law enforcement. Tr. (Supp. 1) 64.

{¶31} The assignment of error is overruled.  The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Wise, J.  and

Delaney, J. concur