[Cite as *State v. Taylor*, 2023-Ohio-4160.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2022 CA 0007 |
| | : | |
| DESANJAY TAYLOR | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
                             of Common Pleas, Case No. 2021 CR
                             0438 N

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      November 17, 2023

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

GARY BISHOP                             GREGORY SCOTT ROBEY
RICHLAND COUNTY PROSECUTOR              ROBEY & ROBEY
                                        14402 Granger Rd.
MATT METCALF                            Cleveland, OH 44137
38 South Park St., 2nd Floor
Mansfield, OH 44902

*Delaney, J.*

{¶1}   Defendant-Appellant Desanjay Taylor appeals his January 6, 2022 conviction and sentence by the Richland County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Indictment

{¶2}   On June 21, 2021, Defendant-Appellant Desanjay Taylor was indicted by the Richland County Grand Jury of 23 counts:

| 1 | Trafficking in Heroin | R.C. 2925.03(A)(2) & (C)(6)(g) | F1 |
|---|---|---|---|
| 2 | Possession of Heroin | R.C. 2925.11(A) & (C)(6)(f) | F1 |
| 3 | Aggravated Trafficking in Drugs | R.C. 2925.03(A)(2) & (C)(1)(f) | F1 |
| 4 | Aggravated Possession of Drugs | R.C. 2925.11(A) & (C)(1)(e) | F1 |
| 5 | Trafficking in Cocaine | R.C. 2925.03(A)(2) & (C)(4)(g) | F1 |
| 6 | Possession of Cocaine | R.C. 2925.11(A) & (C)(4)(f) | F1 |
| 7 | Trafficking in a Fentanyl-Related Compound | R.C. 2925.03(A)(2) & (C)(9)(g) | F1 |
| 8 | Possession of a Fentanyl-Related Compound | R.C. 2925.11(A) & (C)(11)(f) | F1 |
| 9 | Illegal Manufacture of Drugs | R.C. 2925.04(A) & (C)(2) | F2 |
| 10 | Aggravated Trafficking in Drugs | R.C. 2925.03(A)(2) & (C)(1)(a) | F4 |
| 11 | Aggravated Possession of Drugs | R.C. 2925.11(A) & (C)(1)(a) | F5 |
| 12 | Trafficking in Counterfeit Controlled Substances | R.C. 2925.37(B) & (H) | F5 |
| 13 | Possession of Counterfeit Controlled Substances | R.C. 2925.37(A) & (G) | M1 |
| 14 | Having Weapons Under Disability | R.C. 2923.13(A)(3) & (D) | F3 |
| 15 | Having Weapons Under Disability | R.C. 2923.13(A)(3) & (D) | F3 |
| 16 | Trafficking in a Fentanyl-Related Compound | R.C. 2925.03(A)(1) & (C)(9)(c) | F4 |
| 17 | Possession of a Fentanyl-Related Compound | R.C. 2925.11(A) & (C)(11)(b) | F4 |
| 18 | Trafficking in a Fentanyl-Related Compound | R.C. 2925.03(A)(1) & (C)(9)(c) | F4 |
| 19 | Possession of a Fentanyl-Related Compound | R.C. 2925.11(A) & (C)(11)(b) | F4 |
| 20 | Trafficking in Heroin | R.C. 2925.03(A)(1) & (C)(6)(c) | F4 |
| 21 | Possession of Heroin | R.C. 2925.11(A) & (C)(6)(b) | F4 |
| 22 | Trafficking in Heroin | R.C. 2925.03(A)(1) & (C)(6)(c) | F4 |
| 23 | Possession of Heroin | R.C. 2925.11(A) & (C)(6)(b) | F4 |

{¶3} Counts 1 through 12 included a one-year firearm specification, in violation of R.C. 2941.141(A) x 2; Counts 1 through 6 each included the Major Drug Offender (MDO) specification, in violation of R.C. 2941.1410(A); Counts 1 through 13 included the specification for forfeiture of a gun in a drug case, in violation of R.C. 2941.1417(A) x 2.

{¶4} Taylor entered a not guilty plea to the charges at his arrangement on July 7, 2021. A jury trial was set for the matter.

### Motion to Suppress

{¶5} Taylor filed a motion to suppress on August 10, 2021. Taylor argued the trial court should suppress all evidence derived from a search warrant executed on April 22, 2021 at a residence located at Sherman Place, Mansfield, Ohio. The search warrant, Taylor contended, was defective. He also argued the search warrant authorized the seizure of cell phones found at Sherman Place but did not permit the separate search of the cell phones. In support of the motion to suppress, Taylor submitted his affidavit and the affidavits of two other individuals contesting the facts of the search warrant. The State responded to the motion to suppress, providing a copy of the search warrant and affidavit. The search warrant, supported by an affidavit detailing a 14-month investigation by the Richland County METRICH Enforcement Unit, was authorized by a judge with the Mansfield Municipal Court.

{¶6} The trial court held a hearing on September 9, 2021. The State presented the search warrant as its only exhibit, which was admitted by the trial court. Taylor presented the testimony of Detective Perry Wheeler, a narcotics detective with the Richland County METRICH Enforcement Unit. At the hearing, the trial court only admitted Taylor's affidavit but not the affidavits of the two other individuals.

{¶7} On September 16, 2021, the trial court issued its judgment entry overruling the motion to suppress. It found there was no evidence to contradict the reliability of the confidential informants who assisted with the 14-month investigation. The only evidence presented by Taylor to contradict the search warrant and testimony from the detective was Taylor's self-serving affidavit.

**Jury Trial**

{¶8} The jury trial went forward on November 2, 2021. Before the start of trial, Taylor entered a standing objection to the trial court's denial of his motion to suppress. (T. 1). He objected to all evidence seized and entered into evidence as part of the search warrant. (T. 1). The trial court overruled the objection. The following evidence was adduced at trial.

{¶9} The Richland County METRICH Enforcement Unit engaged in a 14-month investigation into drug-related activities in Mansfield, Ohio. As part of its investigation, METRICH performed controlled buys of drugs using confidential informants. Officer Nicole Gearhart testified as to METRICH's procedure for a controlled buy with a confidential informant. In this investigation, METRICH agents used four controlled buys to procure drugs.

{¶10} On February 5, 2020, a confidential informant approached METRICH advising they could purchase suspected heroin from an individual the informant knew as "Chad," located at a residence on Wayne Street in Mansfield, Ohio. At that time, METRICH was not aware of Taylor's phone number or the name "Chad" in relation to Taylor. METRICH set up the controlled buy with the confidential informant where the confidential informant was to purchase a gram and a half of suspected heroin from

"Chad." The confidential informant made the purchase at the residence under the visual and audio surveillance of METRICH. The drugs purchased by the confidential informant from "Chad" were determined to be 1.32 grams of carfentanil, not heroin. On February 6, 2020, METRICH presented the confidential informant with a photo lineup where she identified "Chad" as the person from whom she purchased the drugs.

{¶11} On February 25, 2020, the same confidential informant made a controlled drug purchase from "Chad." She called the same phone number she used for the first controlled purchase to set up the drug purchase. The confidential informant went to the location provided by "Chad," which was Crestline Avenue in Mansfield, Ohio. METRICH watched the confidential informant go into the Crestline Avenue residence. The confidential informant purchased drugs and returned to METRICH. The drugs, which were supposed to be heroin, were tested and discovered to be 1.38 grams of carfentanil, a Schedule II controlled substance. The confidential informant was presented with a photo lineup after the drug purchase. She identified "Chad" with 110% certainty as the person who sold her the drugs. The confidential informant testified at trial and identified Taylor as "Chad," the person she purchased drugs from on February 5 and February 25, 2020.

{¶12} On April 20, 2021, a second confidential informant worked with METRICH to make a controlled drug purchase under audio and visual surveillance. The confidential informant used the same phone number to contact the drug seller as the confidential informant used in the February 5 and February 25, 2020 purchases. The confidential informant arranged to meet at the Pine Bridge Apartments on East Cook Road in Mansfield, Ohio, to purchase a "ball" (3.0 to 3.5 grams of heroin). The transaction occurred in the breezeway of the apartment building and afterwards, the confidential

informant met with METRICH. When the person who sold the drugs to the confidential informant left the East Cook Road location, he was followed by a METRICH officer. The seller drove a black Jeep Grand Cherokee to a Crestline Avenue residence. The drugs purchased by the confidential informant were determined to be 3.74 grams of heroin. The confidential informant was shown a photo lineup where she identified "Chad" as the person she purchased the drugs from with 100% certainty.

{¶13} The same confidential informant met with METRICH on April 21, 2021 to prepare for a second controlled drug buy. The confidential informant was wired with audio and visual recording devices. She contacted "Chad" at the same phone number to arrange a purchase of a "ball" of heroin. The confidential informant was told to come to an upstairs apartment at Sherman Place, Mansfield, Ohio. METRICH officers drove the confidential informant to the Sherman Place location and observed her going into the residence. The confidential informant met with the seller in the kitchen of the Sherman Place apartment and received 3.83 grams of heroin in exchange for the $200 given to the confidential informant by METRICH. In the video recording of the controlled buy, Taylor is seen opening the door of the apartment and letting the confidential informant inside. Taylor is wearing a black and blue colored knit North Face cap. After the controlled buy, the confidential informant was shown a photo array where she picked out Taylor as the person who sold her the heroin. The confidential informant testified at trial and identified Taylor as the person who sold her drugs on April 20th and 21st of 2021.

{¶14} Based on METRICH's investigation, it obtained a search warrant on April 22, 2021 to search the Sherman Place location. METRICH did not conduct any trash pulls on the Sherman Place location, research utility records, or do a wiretap on the residence.

The METRICH officer testified that the location were drugs are trafficked are not typically held in the names of the drug traffickers. METRICH's investigation showed that Taylor, also known as "Chad," was conducting drug activity at the Sherman Place location. METRICH officers, however, had never personally observed Taylor coming from or going to the Sherman Place location.

{¶15} METRICH executed the search warrant at Sherman Place on April 22, 2022. METRICH had Sherman Place under surveillance before it executed the warrant. The officers observed a black Jeep Grand Cherokee parked in front of Sherman Place. The officers also observed a man coming from the upstairs apartment, where they intended to raid. The officers pulled the man aside and determined he was a handyman hired by Taylor to fix a toilet in the upstairs apartment. The handyman knew Taylor by the name, "Chad." The phone number the handyman used to communicate with "Chad" was the same number the confidential informants used to reach Taylor to buy drugs. The handyman testified that "Chad" had opened the door to let him into the Sherman Place apartment before the METRICH officers pulled him away. While testifying, the handyman stated he could not confidently identify Taylor even though it was discovered the handyman not only did work for Taylor, but he had also sold a residential property to Taylor.

{¶16} As METRICH officers entered the apartment to execute the search warrant, officers were stationed outside the apartment. An officer posted outside heard someone drop to the ground from the window of the second-story apartment. He observed a black male picking himself up off the ground and running away, but after a chase, the officers could not locate the man. The officers found a blue and black knit North Face cap and a

set of car keys on the ground below the second story window of the Sherman Place apartment.

{¶17} METRICH officers searched the Sherman Place apartment. The officers found approximately $70,000 worth of drugs, two firearms under the couch, and six cell phones. The officers did not find anything in Sherman Place that identified Taylor directly, such as an ID, mail, or bills. METRICH officers collected a blender with a substance in it, determined to be heroin, and submitted it for DNA testing. During the execution of the search warrant at Sherman Place, METRICH found 519.85 grams of methamphetamines, 105.61 grams of cocaine, 208.03 grams of heroin, 13.89 grams of heroin with fentanyl, and 48.6 grams of fentanyl.

{¶18} One of the cell phones seized in the search warrant, a silver Apple iPhone, was determined to have the same phone number that the confidential informants and METRICH used to contact "Chad" for the controlled drug buys.

{¶19} Taylor was eventually located, arrested, and submitted a buccal swab collecting his DNA for comparison. The black and blue knit North Face hat found on the ground beneath the second-story window of Sherman Place was submitted for DNA testing. The knit hat was tested on both the inside and the outside for DNA. It was determined that Taylor was the source of the major DNA profile to a reasonable degree of scientific certainty. The blender containing heroin found in the Sherman Place apartment was submitted for DNA testing. The major DNA profile on the blender was determined to be Taylor. The two handguns seized in the search warrant were tested for DNA, but Taylor was excluded as a major contributor on both weapons.

{¶20} When METRICH executed the search warrant, a black Jeep Grand Cherokee was parked in front of Sherman Place. METRICH officers had observed Taylor driving the vehicle after a controlled buy, which occurred the day before the search warrant was executed. Using the car keys found under the second-story window of the Sherman Place apartment, an officer entered the vehicle. A.S., a woman known to be connected to Taylor, was the leaseholder of the black Jeep Grand Cherokee. The officers found car insurance papers inside the vehicle's glovebox in the name of Taylor and A.S. The glove box also contained a photograph of Taylor, A.S., and the black Jeep.

### Crim.R. 29, Jury Instructions, and Closing Arguments

{¶21} At the close of the State's case, Taylor renewed his objection to the items seized in the search warrant. The trial court overruled the objection. Taylor moved for a Crim.R. 29 dismissal of all charges, which the trial court overruled. Taylor then rested his case and renewed his Crim.R. 29 motion. The trial court overruled the motion.

{¶22} Taylor also raised an objection to the proposed jury instructions. He first objected to the flight instruction. The State responded that the flight instruction was the standard OJI instruction. The trial court overruled the objection, noting the flight instruction was the standard OJI instruction. It further found the instruction was appropriate because the testimony indicated that Taylor opened the window and ran off during the serving of the warrant. Taylor next requested a special instruction on informant witness testimony. The State argued the confidential informants should be treated like any other witness and argued against a special instruction. The State also argued the parties had discussed the jury instructions throughout the case and Taylor was arguing for the first time that he was requesting a special instruction. The trial court overruled Taylor's request for a special

instruction because the witness testimony jury instruction already asks the jury to consider the witness's credibility when the jury weighs the evidence. The trial court stated all witnesses, other than expert witnesses, are to be treated equally and no special instruction was required.

{¶23} The parties presented their closing arguments. During the State's rebuttal closing argument, the State said:

> Pretty good defense work right there; right? He does a lot of distractions, a lot of things trying to get you to –
>
> MR. ROBEY: Now it's my turn to object. That's an unfair personal attack.
>
> MR. METCALF: I said it was good.
>
> * * *
>
> THE COURT: He did not attack you, Mr. Robey. The Court is going to overrule that objection.
>
> * * *
>
> MR. METCALF: * * * You're going to be deciding, did the State meet it's burden only against Desanjay Taylor? I did say help clean up the community a little bit.
>
> * * *
>
> Defense counsel does a good job of saying "more evidence." Why don't we have more evidence? I tell you what, I agree. I wish he was my detective, the defense attorney on some cases. He probably has defended a lot of cases. He knows all the evidence.

(T. 1046-1050).

**Jury Deliberations and Verdict**

{¶24} During deliberations, the jury had a question on Count 9. The jury instructions stated, "Before you can find Mr. Taylor guilty of Illegal Manufacture of Drugs as charged in Count 9, you must find beyond a reasonable doubt that, on or about the 24th day of April, 2021, and in Richland County, Ohio, he did knowingly manufacture or otherwise engage in any part of the production of a controlled substance, to wit: Cocaine (crack) and Heroin." (T. 962). The jury asked the trial court why Count 9 states "on or about the 24th of April" when everything else stated "on or about the 20th of April." (T. 1067). The indictment for Court 9 stated, "on or about the 24th day of April, 2021."

{¶25} The State argued Count 9 in the indictment should say, "on or about the 20th day of April, 2021 through the 24th day of April, 2021," as the other counts stated. The trial court asked whether the State had the right to amend the indictment after the matter was before the jury. The State argued the date in Count 9 was a clerical error because every other count states the dates as being the 20th of April through the 24th of April. Pursuant to Crim.R. 7(D), the indictment could be amended. Taylor objected to an amendment of the indictment and argued the charge should be sent back to the Grand Jury or the State should dismiss the charge.

{¶26} The trial court overruled Taylor's objection and found pursuant to Crim.R. 7(D), the court could amend the indictment before, during, or after the trial. The trial court found that based on Crim.R. 7(D) and the question posed by the jury, "the Court will indicate to the jury that the indictment should read the same as all other counts, that between April 20th and April 24th." (T. 1071).

{¶27} The jury reached its verdict and found Taylor guilty of the following:

| 1 | Trafficking in Heroin | R.C. 2925.03(A)(2) & (C)(6)(g) | F1 |
|---|---|---|---|
| 2 | Possession of Heroin | R.C. 2925.11(A) & (C)(6)(f) | F1 |
| 3 | Aggravated Trafficking in Drugs | R.C. 2925.03(A)(2) & (C)(1)(d) | *F2* |
| 4 | Aggravated Possession of Drugs | R.C. 2925.11(A) & (C)(1)(c) | *F2* |
| 5 | Trafficking in Cocaine | R.C. 2925.03(A)(2) & (C)(4) | F3 |
| 6 | Possession of Cocaine | R.C. 2925.11(A) & (C)(4)(f)(c) | F3 |
| 9 | Illegal Manufacture of Drugs | R.C. 2925.04(A) & (C)(2) | F2 |
| 10 | Aggravated Trafficking in Drugs | R.C. 2925.03(A)(2) & (C)(1)(a) | F4 |
| 11 | Aggravated Possession of Drugs | R.C. 2925.11(A) & (C)(1)(a) | F5 |
| 12 | Trafficking in Counterfeit Controlled Substances | R.C. 2925.37(B) & (H) | F5 |
| 13 | Possession of Counterfeit Controlled Substances | R.C. 2925.37(A) & (G) | M1 |
| 16 | Trafficking in a Fentanyl-Related Compound | R.C. 2925.03(A)(1) & (C)(9)(c) | F4 |
| 17 | Possession of a Fentanyl-Related Compound | R.C. 2925.11(A) & (C)(11)(b) | F4 |
| 18 | Trafficking in a Fentanyl-Related Compound | R.C. 2925.03(A)(1) & (C)(9)(c) | F4 |
| 19 | Possession of a Fentanyl-Related Compound | R.C. 2925.11(A) & (C)(11)(b) | F4 |
| 20 | Trafficking in Heroin | R.C. 2925.03(A)(1) & (C)(6)(c) | F4 |
| 21 | Possession of Heroin | R.C. 2925.11(A) & (C)(6)(b) | F4 |
| 22 | Trafficking in Heroin | R.C. 2925.03(A)(1) & (C)(6)(c) | F4 |
| 23 | Possession of Heroin | R.C. 2925.11(A) & (C)(6)(b) | F4 |

The jury found Taylor guilty of second-degree felonies in Counts 3 and 4. The jury also found Taylor guilty of specification for Forfeiture of Gun in a Drug Case, pursuant to R.C. 2941.1417(A) on Counts 1, 2, 3, 4, 5, 6, 9, 10, 11,12 and 13.

{¶28} The jury found Taylor not guilty of:

| 7 | Trafficking in a Fentanyl-Related Compound | R.C. 2925.03(A)(2) & (C)(9)(g) | F1 |
|---|---|---|---|
| 8 | Possession of a Fentanyl-Related Compound | R.C. 2925.11(A) & (C)(11)(f) | F1 |
| 14 | Having Weapons Under Disability | R.C. 2923.13(A)(3) & (D) | F3 |
| 15 | Having Weapons Under Disability | R.C. 2923.13(A)(3) & (D) | F3 |

**Sentencing**

{¶29} Taylor appeared for sentencing on December 23, 2021. There was a presentence investigation and Taylor prepared a sentencing memorandum. Taylor was previously sentenced to prison on July 17, 2014 for a five-year term and a five-year term of post release control pursuant to a plea agreement that eliminated a major drug offender specification. When the current crimes were committed, Taylor was on post release control.

{¶30} At 11:00 a.m., the trial court sentenced Taylor and additionally imposed an 8-year sentence due to a Major Drug Offender specification. The court ordered that Counts 1, 3, 5, 9, the PRC time, and the MDO time were to run consecutively. Counts 10, 12, 16, 18, and 22 were to run concurrently. The sentence was an aggregate minimum of 38 years plus the 986 PRC days to a maximum prison term of 43.5 years plus the 986 PRC days.

{¶31} At 12:06 p.m., the trial court went back on the record to conduct a resentencing hearing. The sentencing entry had not been filed yet. (T. 33). The trial court found it had erroneously imposed the 8-year sentence when the substance was not fentanyl related. The trial court vacated the 8 years on the MDO.

{¶32} The trial court reiterated the principles and purposes of sentencing, as well as the seriousness and recidivism factors. It then sentenced Taylor as follows:

| 1 | Trafficking in Heroin | Minimum term of 11 years to a maximum term of 16.5 years | F1 |
|---|---|---|---|
| 2 | Possession of Heroin | Merged with Count 1 | F1 |
| 3 | Aggravated Trafficking in Drugs | 8 years | F2 |
| 4 | Aggravated Possession of Drugs | Merged with Count 3 | F2 |
| 5 | Trafficking in Cocaine | 36 months | F3 |
| 6 | Possession of Cocaine | Merged with Count 5 | F3 |
| 9 | Illegal Manufacture of Drugs | 8 years | F2 |

| 10 | Aggravated Trafficking in Drugs | 18 months | F4 |
|----|----|----|----|
| 11 | Aggravated Possession of Drugs | Merged with Count 10 | F5 |
| 12 | Trafficking in Counterfeit Controlled Substances | 12 months | F5 |
| 13 | Possession of Counterfeit Controlled Substances | Merged with Count 12 | M1 |
| 16 | Trafficking in a Fentanyl-Related Compound | 18 months | F4 |
| 17 | Possession of a Fentanyl-Related Compound | Merged with Count 17 | F4 |
| 18 | Trafficking in a Fentanyl-Related Compound | 18 months | F4 |
| 19 | Possession of a Fentanyl-Related Compound | Merged with Count 18 | F4 |
| 20 | Trafficking in Heroin | 18 months | F4 |
| 21 | Possession of Heroin | Merged with Count 20 | F4 |
| 22 | Trafficking in Heroin | 18 months | F4 |
| 23 | Possession of Heroin | Merged with Count 22 | F4 |

{¶33} Counts 1, 3, 5, 9, 10, 16, 18, and 20 were to be served consecutively. Counts 12 and 22 were to be served concurrently. Taylor was sentenced to serve 986 days of his prior post release control time, consecutive to his sentence in the present case. The trial court imposed a sentence for an aggregate minimum term of 36 years plus 986 PRC days to a maximum term of 41.5 years plus 986 PRC days in prison, with 5 years of mandatory post release control. The sentencing entry was filed on January 6, 2022.

{¶34} It is from this sentencing entry that Taylor now appeals.

**ASSIGNMENTS OF ERROR**

{¶35} Taylor raises eleven Assignments of Error:

I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT CRIMINAL CONVICTIONS OF APPELLANT, RESULTING IN SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS.

II. THE CONVICTIONS OF APPELLANT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND SAID CONVICTIONS MUST BE VACATED.

III. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

IV. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S RULE 29 MOTION.

V. THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO AMEND THE INDICTMENT IN COUNT NINE RESULTING IN A DENIAL OF DUE PROCESS AND A FAIR TRIAL.

VI. THE PROSECUTOR ENGAGED IN AFFIRMATIVE MISCONDUCT DURING CLOSING ARGUMENT RESULTING IN A DENIAL OF DUE PROCESS AND A FAIR TRIAL.

VII. THE TRIAL COURT ERRED WHEN IT GAVE IMPROPER JURY INSTRUCTIONS REQUESTED BY THE STATE RESULTING IN A DENIAL OF DUE PROCESS AND A FAIR TRIAL.

VIII. THE TRIAL COURT ERRED IN IMPOSING A CORRECTED SENTENCE.

IX. THE TRIAL COURT ERRED WHEN IT IMPOSED AN AGGREGATE INDEFINITE PRISON TERM OF 36-41 ½ YEARS, WHICH IS NOT SUPPORTED BY THE RECORD.

X. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES, WHICH ARE NOT SUPPORTED BY THE RECORD.

XI. THE INDEFINITE PRISON TERM IMPOSED IS IMPROPER AS THE REAGAN TOKES LAW, WHICH WAS APPLIED IN THIS CASE, IS UNCONSTITUTIONAL.

## ANALYSIS

### III. Motion to Suppress Evidence

{¶36} In Taylor's third Assignment of Error, he contends the trial court erred in denying his motion to suppress the evidence seized based on the search warrant executed on Sherman Place. He preserved his objection to the admission of the evidence seized from the search warrant on Sherman Place.

{¶37} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶38} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In

reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See, State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See, Williams, supra.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶39} As he did in his motion to suppress before the trial court, Taylor argues on appeal there are several reasons to suppress the evidence. First, Taylor argues the affidavit supporting the search warrant contained material omissions, which were made with reckless disregard for the truth. The Ohio Supreme Court has held that "a challenge to the factual veracity of a warrant affidavit must be supported by an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim." *State v. Moore*, 5th Dist. Licking No. 16-CA-26, 2016-Ohio-7594, ¶ 28 quoting *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980), citing *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). As the United States Supreme Court first held in *Franks*, a challenge to the affiant's veracity requires "allegations of deliberate falsehood or of reckless disregard for the truth." *Franks*, 438 U.S. at 171. Such allegations must be supported by an "offer of proof [that]

should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained." *Roberts*, 62 Ohio St.2d at 178. In order to require a trial court to hold a hearing, a defendant must first "make[ ] a substantial preliminary showing" that the affiant included a false statement in the affidavit either knowingly and intentionally, or with reckless disregard for the truth. *Id.* at 177, citing quoting *Franks*, 478 U.S. at 155. Even if a defendant makes a sufficient preliminary showing, a hearing is not required unless, without the allegedly false statements, the affidavit is unable to support a finding of probable cause. *Id.* at 178, citing *Franks*, 478 U.S. at 171–72.

{¶40} A search warrant and its supporting affidavits enjoy a presumption of validity. *State v. McDaniel*, 5th Dist. Richland No. 14CA47, 2015-Ohio-1007, ¶ 27 citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). When a motion to suppress attacks the validity of a search conducted pursuant to a warrant, the burden of proof is on the defendant to establish that evidence obtained pursuant to the warrant should be suppressed. *Id.*, citing *State v. Dennis*, 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997).

{¶41} In support of his argument that the affidavit included material omissions, Taylor attempted to present the affidavits of Taylor, A.S., C.H., and J.B. to contradict the affidavit prepared by Detective Perry Wheeler, a narcotics detective with METRICH. These individuals were mentioned in the search warrant as being involved with Taylor and drug trafficking based on the METRICH investigation. A.S., C.H., and J.B. were available as witnesses but did not testify. The State objected to the trial court admitting the three self-serving affidavits into evidence because the witnesses were available and

did not testify. The trial court sustained the objection. (Suppression Hearing, T. 67). Taylor did not assign this ruling as an error on appeal. The only remaining affidavit was from Taylor.

{¶42} Taylor brought the *Franks* challenge because he argued Det. Wheeler omitted information from the affidavit. METRICH utilized confidential informants and controlled drug buys during its investigation to establish that Taylor was selling drugs from various locations, including Sherman Place. Det. Wheeler testified that METRICH officers did not personally observe Taylor leaving Sherman Place to go to Crestline Avenue or leave Crestline Avenue and return to Sherman Place. (T. 25). Counsel for Taylor questioned Det. Wheeler:

Q. And that's omitted from the affidavit.

MS. SCOTT: Objection. It didn't happen. Of course it is omitted. Your Honor, again –

MR. ROBEY: Here is the point.

MS. SCOTT: Objection to this questioning. It doesn't say that he was leaving from Sherman, because he wasn't. That's not an omission.

MR. ROBEY: It is a material omission.

* * *

MS. SCOTT: Not saying something that is false isn't an omission.

* * *

Q. So would you consider it a material omission if you don't put that Mr. Taylor is coming from or going to Sherman Place if you didn't observe that?

A. I – how could I omit something I don't know if it happened.

(T. 25-26; 47). Taylor argues the material omissions created a legitimate question as to the nexus between Taylor's alleged drug activities and the necessity to search Sherman Place.

{¶43} In its judgment entry denying Taylor's motion to suppress, the trial court found there was no evidence to contradict the reliability of the confidential informants. While METRICH officers did not personally observe Taylor coming and going from Sherman Place to the other locations where controlled buys occurred, on April 21, 2021, METRICH conducted a controlled buy at Sherman Place where Taylor was recorded facilitating the transaction with the confidential informant while wearing the same hat later found at the scene. The confidential informant identified Taylor as the person she purchased heroin from at Sherman Place.

{¶44} This leads to Taylor's second argument that there was no probable cause to support the search warrant. A judge may issue a search warrant only upon a finding that "probable cause for the search exists." Crim.R. 41(C). In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Brown*, 5th Dist. Richland No. 2022 CA 0042, 2023-Ohio-3906, ¶ 43 citing *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), at paragraph one of the syllabus (1980), citing *Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The totality of the circumstances must be examined in determining whether probable cause existed for a search warrant. *Illinois v. Gates,*

*supra*. "Probable cause" means only the probability and not a prima facie showing of criminal activity. *George, supra*, at 644. *See also, Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶45} When challenging the sufficiency of an affidavit on the basis of lack of probable cause to support the issuance of the warrant, it is the duty of a reviewing court to simply ensure that the court had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). When reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, an appellate court should accord great deference to the court's judgment. *State v. McDaniel*, 5th Dist. Richland No. 14CA47, 2015-Ohio-1007, ¶ 26, citing *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992). Doubtful or marginal cases should be resolved in favor of upholding the warrant. *See George*, at paragraph two of the syllabus.

{¶46} In deference to the trial court and upon this record, we find the court had a substantial basis for concluding that probable cause existed to search Sherman Place. The search warrant detailed the 14-month investigation conducted by METRICH involving multiple controlled drug buys with "Chad," culminating in a recorded, controlled drug buy from "Chad" at Sherman Place. The totality of the circumstances of this investigation showed there was probable cause to support the search warrant for Sherman Place.

{¶47} Taylor raises staleness as a basis for finding the search warrant lacked probable cause. During the 14-month investigation, some of the information supporting the search warrant was arguably over one-year old when the search warrant was signed. We must consider, however, the age of the information in relation to the nature of the criminal activity stated in the search warrant. METRICH was investigating ongoing drug

trafficking conducted by Taylor and associates. When an affidavit supporting a warrant involves ongoing criminal activity like drug trafficking, the affidavit may support the issuance of a search warrant even when the information provided in the affidavit is not recent. *State v. Gleason*, 2022-Ohio-3893, 199 N.E.3d 1060, ¶ 26 (5th Dist.) citing *State v. Stewart*, 5th Dist. Perry No. 21-CA-00008, 2021-Ohio-4444, ¶ 15 citing *United States v. Ortiz*, 143 F.3d 728, 733 (2d Cir. 1998), and *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981) ("[W]hen the supporting facts 'present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and the presentation of the application becomes less significant.' ").

{¶48} "There is no arbitrary time limit that dictates when information [offered to support a search warrant application] becomes stale." *Gleason*, 2022-Ohio-3893, ¶ 25 quoting *State v. Ingold*, 10th Dist. Franklin No. 07-AP648, 2008-Ohio-2303, 2008 WL 2026441. Rather, "[t]he test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues." *Id*. "The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for warrant." *Id*. at 23. "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity." *Id*. For example, information in an affidavit over one month old has been found to support probable cause to issue a search warrant where the affidavit describes ongoing criminal activity. *Gleason*, 2022-Ohio-3893, ¶ 27 citing *State v. Clouser*, 4th Dist. Highland No.

16CA4, 2016-Ohio-5370, 2016 WL 4268772, ¶ 16-17 (two and one-half months between last incidents of drug transactions and warrant application not stale and supported probable cause); *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, 2002 WL 2005708, ¶ 10-14 (six months between last drug transactions and warrant application not stale and supported probable cause).

{¶49} In this case, the search of Sherman Place was the result of a 14-month investigation of drug trafficking in Mansfield, Ohio, centered around the activity of "Chad." On April 21, 2021, METRICH conducted a controlled buy at Sherman Place, where Taylor was observed in the recorded surveillance. The search warrant was obtained on April 22, 2021. The totality of the circumstances based on the nature of the ongoing criminal activity supported the finding of probable cause for the search warrant.

{¶50} Taylor finally contends the search warrant did not authorize a search of the cell phones seized at Sherman Place. He states that METRICH was required to obtain a search warrant for each cell phone. A review of the affidavit shows Paragraphs 39 through 47 explicitly refer to cell phones and their role in the investigation. For each controlled buy, the confidential informant contacted "Chad" by phone using the same phone number and arranged to purchase illegal drugs.

{¶51} Based on this record, we find no error for the trial court to deny Taylor's motion to suppress the search warrant for Sherman Place and to overrule his objections at trial to the evidence seized from said search warrant. Taylor's third Assignment of Error is overruled.

**I., II., and IV. Manifest Weight and Sufficiency of the Evidence**

{¶52} We consider Taylor's first, second, and fourth Assignments of Error together because they are interrelated and utilize the same facts for determination. In his first Assignment of Error, Taylor argues the State failed to present sufficient evidence to support criminal convictions on Counts 1 through 6: Trafficking in Heroin, Possession of Heroin, Aggravated Trafficking in Drugs, Aggravated Possession of Drugs, Trafficking in Cocaine, and Possession of Cocaine. Taylor contends in his fourth Assignment of Error that the trial court erred when it denied his Crim.R. 29 motion on Counts 1, 3, 5, and 6: Possession of Heroin, Aggravated Trafficking in Drugs, Trafficking in Cocaine, and Possession of Cocaine. In the second Assignment of Error, Taylor argues his convictions were against the manifest weight of the evidence. (We consider all 19 convictions because he does not specify which convictions are against the manifest weight of the evidence.)

{¶53} The trial court denied Taylor's Crim.R. 29 motion for acquittal. The appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *State v. Henderson*, 5th Dist. Richland No. 17CA104, 2019-Ohio-4958, ¶ 15 citing *State v. Larry*, 5th Dist. Holmes No. 15CA011, 2016-Ohio-829, ¶ 20 citing *State v. Carter*, 72 Ohio St.3d 545, 553, 1995-Ohio-104, 651 N.E.2d 965.

{¶54} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d

259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶55} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶56} Taylor first contends the State failed to present sufficient evidence to sustain convictions on Counts 1 through 6. These counts relate to the evidence collected pursuant to the search warrant issued and executed on Sherman Place. Taylor argues there was no evidence presented that connected Taylor to Sherman Place. While keys were found on the ground next to the knit hat, the keys were not tested for DNA and an officer did not attempt to open the Sherman Place door with the keys. An officer heard a person landing on the ground when the search warrant was executed, but the officer could

not identify the person. The officers did not find anything in Sherman Place directly identifying Taylor, such as an ID card, mail, or utility bill. The handyman could not identify Taylor.

{¶57} We have reviewed the record and find the evidence was sufficient to secure a conviction on Counts 1 through 6. At least two confidential informants brought Taylor's identity to the attention of METRICH during its investigation of drug trafficking in Mansfield, Ohio. METRICH conducted a controlled drug buy with a confidential informant on April 21, 2021. The confidential informant was told to come to Sherman Place for the transaction and METRICH observed the confidential informant as she went to Sherman Place. Taylor was seen and recorded selling heroin to a confidential informant in exchange for $200 at Sherman Place on April 21, 2021, one day before METRICH executed the search warrant. The confidential informant identified Taylor from a photo lineup after the controlled buy at Sherman Place. While the handyman was not able to identify Taylor during his testimony, he testified that on the day the search warrant was executed, Taylor let him into Sherman Place to fix a toilet and Taylor was in the apartment. The phone number the handyman used to contact Taylor was the same phone number the confidential informants used to set up controlled drug buys with Taylor.

{¶58} Det. Wheeler testified that METRICH did not contact utility companies to determine who owned Sherman Place. He stated that based on his experience of 500 to 1000 search warrants, drug dealers do not keep utilities in their names. METRICH also did not contact the landlord for Sherman Place. Det. Wheeler testified that his experience was that if METRICH contacted the landlord prior to the execution of the search warrant, the landlord told the subject of the search warrant that the police were coming.

{¶59} After viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of the crimes charged in Counts 1 through 6 were proven beyond a reasonable doubt. Counts 1 through 6 were supported by the sufficiency of the evidence.

{¶60} Taylor contends in his second Assignment of Error that his convictions were against the manifest weight of the evidence. He argues the jury lost its way in convicting Taylor because there was no connection between Taylor, Sherman Place, and the evidence of drug trafficking activity found after the execution of the search warrant. Two confidential informants testified at trial as to the controlled buys they conducted on behalf of METRICH. Both women identified Taylor as the person they purchased drugs from. The second confidential informant purchased heroin from Taylor at Sherman Place. Her controlled buy was recorded on video. Taylor is seen in the video, wearing a knit North Face hat, standing in Sherman Place where drug paraphernalia is seen in the background. The knit North Face hat was discovered at Sherman Place, tested for DNA, and determined the major donor profile of DNA was Taylor. The blender found in Sherman Place was determined to contain heroin and tested for DNA, which was determined to belong to Taylor.

{¶61} It is evident in this case that the jury weighed the evidence. Taylor was charged with first-degree felonies in Counts 3 and 4. The jury instead found Taylor guilty of second-degree felonies in Counts 3 and 4. The jury also found Taylor not guilty in Counts 7, 8, 14, and 15. In Counts 14 and 15, Taylor was charged with having weapons under disability based on the firearms found in Sherman Place during the execution of the search warrant. The testimony showed that the firearms were tested for DNA and

Taylor's DNA was not found on the firearms. The jury's not guilty findings show it considered the evidence and discerned the State demonstrated beyond a reasonable doubt that Taylor committed the remaining offenses.

{¶62} Upon our review of the record, we conclude Taylor's convictions are supported by the sufficiency of the evidence and not against the manifest weight of the evidence. Taylor's first, second, and fourth Assignments of Error are overruled.

## V. Crim.R. 7(D)

{¶63} In his fifth Assignment of Error, Taylor contends the trial court erred when it permitted the State to amend Count 9 of the indictment. We disagree.

{¶64} Crim. R. 7(D) provides:

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.

Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

{¶65} This Court has consistently held that although Civ.R. 7(D) permits most amendments, it flatly prohibits amendments which change the name or identity of the crime charged. *State v. Isenogle*, 5th Dist. Stark No. 2021CA00079, 2022-Ohio-1257, ¶ 32 citing *State v. Merritt*, 5th Dist. Richland No. 2020 CA 0063, 2021-Ohio-2847, 2021 WL 3674080, ¶ 47 citing *State v. O'Brien*, 30 Ohio St.3d 122, 126, 508 N.E.2d 144 (1987). A trial court commits reversible error when it permits an amendment which changes the name or identity of the offense charged, regardless of whether the defendant suffered prejudice. *State v. Smith*, Franklin App. No. 03AP–1157, 2004-Ohio-4786, 2004 WL 2008465, at ¶ 10. *See, also, State v. Headley*, 6 Ohio St.3d 475, 6 OBR 526, 453 N.E.2d 716. "Whether an amendment changes the name or identity of the crime charged is a matter of law." *State v. Cooper*, 4th Dist. Ross App. No. 97CA2326, 1998 WL 340700 (June 25, 1998), citing *State v. Jackson*, 78 Ohio App.3d 479, 605 N.E.2d 426 (1992).

{¶66} In this case, the jury discovered during deliberations that Count 9 of the indictment read "on or about the 24th day of April." The jury questioned the discrepancy in Count 9 when all the other indictments stated, "on or about the 20th day of April through the 24th day of April." Pursuant to Crim.R. 7(D), the trial court found it was a clerical error

and permitted the State to amend Count 9 of the indictment to amend the indictment to correct the error.

{¶67} The Ohio Supreme Court has held that Crim.R. 7(D) permits errors in an indictment to be corrected during the course of or even after trial, as long as such amendment makes no change in the name or identity of the crime charged. *State v. Duff*, 5th Dist. Stark No. 1997CA00143, 1998 WL 172990, *3 (Jan. 9, 1998) citing *State v. O'Brien*, 30 Ohio St.3d 122, 125-126, 508 N.E.2d 144 (1987). Amendments that change " 'only the date on which the offense occurred * * * [do] not charge a new or different offense, nor * * * change the substance of the offense.' " *State v. Lindsay*, 5th Dist. Richland No. 18CA87, 2019-Ohio-157, 2019 WL 258707, ¶ 29 quoting *State v. Pyles*, 4th Dist. Scioto No. 17CA3790, 2018-Ohio-4034, 2018 WL 4846710, ¶ 27 quoting *State v. Evans*, 4th Dist. Scioto No. 08CA3268, 2010-Ohio-2554, ¶ 35, quoting *State v. Quivey*, 4th Dist. Meigs No. 04CA8, 2005-Ohio-5540, ¶ 28.

{¶68} In this case, only the date on which the offense occurred was amended in Count 9 to conform to dates stated in the other 22 counts. The State's amendment did not charge a new or different offense, nor did it change the substance of the offense. The trial court properly permitted the State to amend the indictment due to a clerical error, contained within the indictment, regarding the dates set forth under Count 9. Taylor's fifth Assignment of Error is overruled.

### VI. Prosecutorial Misconduct

{¶69} Taylor contends in his sixth Assignment of Error that the State engaged in prosecutorial misconduct during its rebuttal closing arguments. Taylor contends the State

made personal attacks on defense counsel, saying he was good at defense work because he distracted the jury from the evidence. The trial court overruled the objection.

{¶70} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Hoppe*, 5th Dist. Licking No. 22CA0032, 2023-Ohio-2188, ¶ 68 citing *Sunbury v. Sullivan*, 5th Dist. Delaware No. 11CAC030025, 2012-Ohio-3699, ¶ 30 citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. *State v. Treesh*, 90 Ohio St.3d 460, 464, 2001-Ohio-4, 739 N.E.2d 749. Furthermore, both the prosecution and the defense have wide latitude during opening and closing arguments.

{¶71} We find no error in the admission of the cited comments, in the context of the entire trial. It is evident beyond a reasonable doubt that the jury would have found Taylor guilty without the State's comments.

{¶72} Taylor's sixth Assignment of Error is overruled.

### VII. Jury Instructions

{¶73} In his seventh Assignment of Error, Taylor contends the trial court abused its discretion in overruling his objection to the inclusion of the "flight" instruction and overruling his motion to include a jury instruction as to the credibility of a government informant as witnesses. We disagree.

{¶74} Jury instructions are within the sound discretion of the trial court and the court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. DeMastry*, 155 Ohio App.3d 110, 2003-Ohio-5588, 799 N.E.2d 229 (5th Dist.), ¶ 54, internal citations omitted. Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶75} A trial court has broad discretion to decide how to fashion jury instructions, but it must "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Lazzerini*, 5th Dist. No. 2019CA00142, 2021-Ohio-1998, 173 N.E.3d 907, appeal not allowed, 164 Ohio St.3d 1448, 2021-Ohio-3336, reconsideration denied, 165 Ohio St.3d 1490, 2021-Ohio-4409, ¶ 92, citing *State v. Price*, 162 Ohio St.3d 609, 2020-Ohio-4926, 166 N.E.3d 1155, ¶ 22. A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear the jury instructions constituted prejudicial error. *Id.*, citing *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, 2002 WL 727009, ¶ 4, internal citation omitted. Pursuant to Crim. R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *State v. Davis*, 5th Dist. Delaware No. 20CAA120052, 2022-Ohio-577, ¶ 39.

{¶76} The trial court included a jury instruction regarding Taylor's flight from Sherman Place when the search warrant was executed:

Testimony has been admitted indicating Mr. Taylor fled the scene. You are instructed that fleeing the scene alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness or awareness of

guilt. If you find that the facts do not support that the defendant fled the scene, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider the evidence of any purpose. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by consciousness or awareness of guilt, you may but are not required to consider the evidence in deciding whether the defendant is guilty of the crimes charged. You alone will determine what weight, if any, to give this evidence.

(T. 990). The trial court overruled Taylor's objection to the instruction, finding the flight instruction was the standard OJI instruction and was supported by the evidence presented at trial.

{¶77} The trial court did not err in permitting the flight instruction. The evidence at trial showed that Taylor was in Sherman Place when METRICH arrived to execute the search warrant. The handyman stated Taylor was inside the apartment and the black Jeep Grand Cherokee, connected to Taylor, was parked on the street outside Sherman Place. When METRICH entered the apartment, the officers did not see Taylor inside. An officer stationed outside Sherman Place heard a person land on the ground and saw a black male running away. A knit North Face hat and car keys were found on the ground underneath a second-story window where the officer saw the man land on the ground. DNA testing determined that Taylor was the major profile donor of DNA on the hat. The car keys were determined to belong to the black Jeep Grand Cherokee.

{¶78} Taylor next argues the trial court erred when it did not give the requested instruction as to the testimony of confidential informants. In his appellate brief, Taylor does not cite this Court to his proposed jury instruction or to any case law supporting his proposed jury instruction. It is not the duty of an Ohio appellate court to create arguments for the parties and search the record for evidence to support them. *Brooks v. RKUK, Inc.*, 5th Dist. Stark No. 2021CA00048, 2022-Ohio-266, 2022 WL 279013, ¶ 60 citing *Salameh v. Doumet*, 2019-Ohio-5391, 151 N.E.3d 83, (5th Dist.), ¶ 60 citing *Colvin v. Colvin*, 5th Dist. Guernsey No. 18 CA 27, 2019-Ohio-2209, 2019 WL 2375394, ¶ 40 citing *Washek v. Washek*, 5th Dist. Fairfield No. 18 CA 22, 2019-Ohio-1504, 2019 WL 1785411, ¶ 21 citing *Sisson v. Ohio Department of Human Services*, 9th Dist. Medina No. 2949-M, 2000 WL 422396.

{¶79} We find no error for the trial court to provide the standard OJI instruction as to the jury's evaluation of witness testimony:

> You are the sole judge of the facts and the weight of the evidence. In weighing the evidence, you must consider the credibility of the witnesses. Use the tests of truthfulness you are accustomed to use in your daily lives. These tests include the appearance of each witness on the stand; the witness' manner of testifying; the reasonableness of that testimony; the opportunity the witness had to see, hear and know the things concerning which he or she testified; the witness' accuracy of memory; frankness or lack of it; intelligence, interest and bias, if any; together with all the facts and circumstances surrounding the testimony. Use these tests to give each witness' testimony such weight as you think proper.

(T. 937). The trial court explained the OJI instruction was sufficient because all witnesses, other than expert witnesses, were to be treated equally. Taylor does not provide this Court with any law to contradict the trial court's determination.

{¶80} Taylor's seventh Assignment of Error is overruled.

## VIII., IX., and X. Sentencing

{¶81} Taylor contends in his eighth, ninth, and tenth Assignments of Error that the trial court's imposition of sentence was contrary to law. We disagree.

{¶82} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31. Subsection (G)(2) sets forth this court's standard of review:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section

2929.14, or division (I) of section 2929.20 of the Revised Code, whichever,

if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶83} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range.' " *State v. Padilla*, 5th Dist. Tuscarawas No. 2022 AP 08 0023, 2023-Ohio-1995, ¶ 13, quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, ¶ 36.

{¶84} As stated by the Supreme Court of Ohio, R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at 42.

{¶85} The Supreme Court of Ohio recently clarified the *Jones* opinion as follows:

The narrow holding in *Jones* is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *See Jones* at ¶¶ 31, 39. Nothing about that holding should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are " 'otherwise contrary to law.' " *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b). This court also recognized that "otherwise contrary to law" means " 'in violation of statute or legal regulations at a given time.' " *Id.* at ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable.

*State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22.

{¶86} Taylor does not dispute that his sentence is within the statutory range for the felonies of which he was convicted. He contends the trial court erred when it imposed a corrected sentence that increased his prison time. The record shows the trial court did not increase any prison term on any count when it re-sentenced Taylor; the trial court ordered that sentences that were previously ordered to run concurrently would be served

consecutively. In support of his argument of the trial court's error, he cites this Court to *State v. Bryant*, 2022-Ohio-1878, where the Ohio Supreme Court held that a trial court acted contrary to law when it increased the defendant's sentence by six years after the defendant had a significant outburst following the trial court's original pronouncement of sentence. *Id.* at ¶ 24. We do not find the facts of *Bryant* support Taylor's argument. The trial court did not impose a sentence based on factors or considerations that were extraneous to those that are permitted by R.C. 2929.11 and 2929.12.

{¶87} Taylor then argues the trial court erred when it imposed an aggregate indefinite prison term because it was not supported by the record. As stated above, we find the trial court complied with the felony sentencing statutes and the sentence was not contrary to law.

{¶88} Taylor finally contends the trial court improperly imposed consecutive sentences. In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, ¶ 23. R.C. 2929.14(C)(4) states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness

of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶89} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Newman*, 5th Dist. Fairfield No. 20-CA-44, 2021-Ohio-2124, 2021 WL 2628079, ¶ 100, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. In other words, the sentencing court does not have to perform "a word-for-word recitation of the language of the statute." *Id.* at ¶ 29. Therefore, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the

findings, consecutive sentences should be upheld." *Id.* If a sentencing court fails to make the findings required by R.C. 2929.14(C)(4), a consecutive sentence imposed is contrary to law. *Id.* at ¶ 34. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* at ¶ 37.

{¶90} A review of the record shows the trial court made the required findings in order to impose consecutive sentences. Taylor committed one or more of the offenses while he was under post release control for a prior offense. (T. 20, 21, 36). Taylor committed at least two of the multiple offenses as part of one or more courses of conduct pursuant to R.C. 2929.14(C)(4)(b). (T. 36, 20-21). The trial court reviewed the presentence investigation report and Taylor's sentencing memorandum. (T. 2). It found that Taylor's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime. (T. 36-37).

{¶91} Taylor's eight, ninth, and tenth Assignments of Error are overruled.

### XI. Reagan Tokes Act

{¶92} In his eleventh Assignment of Error, Taylor argues his indefinite prison terms imposed pursuant to the Reagan Tokes Act, codified in R.C. 2967.271, violates his right to a jury trial, the doctrine of separation of powers, and due process principals under the federal and state constitutions.

{¶93} In *State v. Hacker*, 2023-Ohio-2535, -- N.E.3d --, the Ohio Supreme Court held: 1) R.C. 2967.271 does not violate the separation of powers doctrine; 2) R.C. 2967.271 does not violate a defendant's right to a jury trial; 3) R.C. 2967.271 is not void for vagueness, and 4) R.C. 2967.271 does not violate a defendant's procedural due

process rights. See *State v. Allen*, 5th Dist. Stark No. 2022 CA 00151, 2023-Ohio-3739, 2023 WL 6785488, ¶ 49.

{¶94} Taylor's eleventh Assignment of Error is overruled.

## CONCLUSION

{¶95} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, J., concur.